STATE OF VERMONT

|  |  |  |
|---|---|---|
| | } | |
| | } | Vermont Environmental Court |
| In re: Appeals of | } | |
| Shantee Point Estates, Inc. | } | Docket Nos. 169-9-98 Vtec, |
| | } | 144-8-99 Vtec, 152-8-99 Vtec; and |
| | } | 10-1-00 Vtec |
| | } | |
| | } | |

|  |  |  |
|---|---|---|
| | } | |
| Stephen Dana, | } | |
| Plaintiff, | } | |
| | } | Franklin County, SS |
| v. | } | Franklin Superior Court |
| | } | |
| Shantee Point Estates, Inc., | } | |
| Defendant, | } | |
| | } | |
| v. | } | Docket No. S 313-97 Fc |
| | } | |
| Town of St. Albans, | } | |
| Third-Party Defendant. | } | |
| | } | |

DECISION and ORDER

In Docket No.169-9-98 Vtec, Appellant Shantee Point Estates, Inc. appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of St. Albans upholding a Notice of Violation for constructing a road without site plan approval.  In Docket No.144-8-99 Vtec, Appellant appealed from the Planning Commission's July 6, 1999 decision denying site plan approval for the construction of a segment of the road.  In Docket No.152-8-99 Vtec, Appellant appealed from the ZBA's July 15, 1999 decision upholding a Notice of Violation for constructing the road without subdivision approval.  In Docket No.10-1-00 Vtec, Appellant appealed from the Planning Commission's January 4, 2000 decision, issued in writing on January 11, 2000, denying site plan approval for the construction of a segment of the road in a  revised location. By agreement of the parties, the four Environmental Court cases were consolidated, and the parties agreed that the time to appeal for all four cases would run from the last final decision in any of them.  The related

1

Franklin Superior Court case, Docket No. S 313-97 FC, was heard before Judge Wright in conjunction with the Environmental Court cases, but was not formally consolidated with them. Appellant/Defendant Shantee Point Estates, Inc. is represented by Liam M. Murphy, Esq. and Lisa B. Shelkrot, Esq.; Intervenor/Plaintiff Stephen Dana is represented by Brian P. Hehir, Esq.; and the Town was represented throughout these proceedings by David A. Barra, Esq., and has been represented since September 18, 2000 by Paul S. Gillies, Esq.

Effect of Prior Rulings:

The December 15, 1999 decision and order in S 313-97 FC, determined that the disputed segment of road is a private road and not a Class IV Town Highway, and that the boundary between Plaintiff's and Defendant's property is the northerly line of Lot 11 and its extension easterly. The Court ordered that a portion of the so-called connector road which had been constructed on Plaintiff's property had to be reconstructed so that it runs on Defendant's property.

As the Environmental Court order of January 17, 2000 noted, all issues in Docket No.169-9-98 Vtec were concluded as of the December 15, 1999 decision in S 313-97 FC determining the road to be a private road. The Environmental Court summary judgment order of June 1, 1999, had determined that Appellant was required to apply for and obtain site plan approval for the so-called "connector segment" of the new road, but that if the old road were determined to be private, and therefore could be discontinued, then site plan approval would not be required for the remainder of the new road other than the connector segment. By agreement of the parties, the time to appeal runs from the last final decision in the four consolidated Environmental Court cases.

As the Environmental Court order of January 17, 2000 also noted, Docket No. 152-8-99 Vtec was concluded by the Environmental Court summary judgment order of that date, ruling that subdivision approval is required for the new road.

An evidentiary hearing was held on the remaining issues in all the related Environmental Court and Franklin Superior Court matters before Merideth Wright, sitting both as Environmental Judge and specially assigned as Presiding Judge. Both Assistant

Judges were unavailable for this matter. 4 V.S.A. §112. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows. Factual findings made in the June 1999 decision in Docket No. 169-9-98 Vtec and in the December 15, 1999 decision in Docket No. S 313-97 FC, are hereby incorporated by reference, and are repeated here only as necessary to clarify this remaining decision.

Shantee Point is a peninsula of land running roughly north to south and extending into Lapan Bay of Lake Champlain in the Town of St. Albans. A road runs westerly from Maquam Shore Road to Lake Champlain, and turns southerly and runs along the shore down the peninsula. There is no dispute that the portion of the road from Maquam Shore Road to the Samson-Dana line(also identified as "the turnaround") is a Class III town highway, known as Town Highway 27 or Samson Road.

The road continues along the shore as a gravel road, known as Shantee Point Road. In its original configuration, it turned towards the southeast on Appellant/Defendant's property between leased lots 19 and 21, and then turned again towards the south behind lots 21 and 22 to serve the remaining leased lots and Intervenor/Plaintiff's property at the end of the Point. The first .38 mile of this road extending southerly from the Samson-Dana line to the boundary between lots 10 and 11 is the portion of the road that was disputed, and which the December 15, 1999 decision in Docket No. S 313-97 FC ruled to be a private road. The remainder of the gravel road continuing towards the southwest and south was undisputed to be a private road. The parties agree that the entire private gravel road is not constructed to the standards in §4 of the Town road ordinance adopted in 1988, in that its traveled way is less than 28 feet wide and it is unpaved. The width of the right of way is undefined by the Partition Order, both on Intervenor/Plaintiff's property and on Appellant/Defendant's property.

In 1997, Appellant/Defendant constructed an alternative road from the front road near the lot 10-11 boundary, extending easterly away from the lake at that location, and then turning to the south behind lots 11-19, joining with the original road behind lot 21 to serve the remaining leased lots and Intervenor/Plaintiff's property at the end of the Point. The portion of this alternative road which connected the original road (in front of

3

Intervenor/Plaintiff's lots 1 through 10) with the new road running behind lots 11 through 19, was initially constructed on a portion of what the Court later ruled to be Intervenor/Plaintiff's property, and was redesigned to be located entirely on Appellant/Defendant's property. Site plan approval for the original design of this alternative road is the subject of Docket No. 144- 8-99 Vtec; site plan approval for the revised design of this alternative road is the subject of Docket No. 10-1-00 Vtec.

For the purposes of this discussion, the road in its original configuration, extending down the shore in front of lots 11 through 19, and turning towards the southeast between lots 19 and 21, is referred to as "the old road" or "the front road." The road in its new configuration is referred to as "the new road" or "the back road." The segment of road extending from the existing shore road over and behind lot 11 to connect with the back segment running behind lots 11 through 19 is referred to as "the connector segment" and is the subject of the two applications for site plan approval.

Docket No. S 313-97 Fc

The remaining questions to be resolved in the Superior Court case are, first, whether under the Partition Order Appellant/Defendant may relocate the road without obtaining Intervenor/Plaintiff Dana's agreement and, second, whether the "width and quality" of the new road is at least as good as that of the old road.

The language governing relocation of the roadway is found in the partition order of the Franklin Superior Court in Docket No. S 323-88 Fc, issued as of April 9, 1990. It states that nothing in the partition order "shall be interpreted [or] construed to prohibit the . . . access roadway, as it crosses the . . . parcels partitioned to [now-Appellant/Defendant] from being relocated by [Appellant/Defendant] (subject to applicable laws and regulations, if any) as long as its width and quality is at least maintained." Similar language is found in the preceding section of the Partition Order, giving reciprocal rights to Intervenor/Plaintiff to relocate the road running over his portion of the partitioned property.

As the language of the Partition Order is not ambiguous, we do not turn to extrinsic evidence of either the landowners' intent or the Commissioners' intent. The Partition Order gives each party an access easement across the other's land, for pedestrian and vehicular

4

traffic over the existing access roadway. Further, it gives each party the right to relocate that access roadway elsewhere on that party's own land, subject to any applicable laws and regulations (such as the zoning requirements addressed in the related Environmental Court cases) conditioned on at least maintaining, if not improving, the width and quality of that roadway. The right to relocate in each instance is given solely to the owner of the underlying land.

The fact that the Partition Order gives this right "subject to any applicable laws and regulations" does not limit or expand the scope of the property rights granted by the Partition Order. If permits are required prior to relocating the easement, then the Partition Order simply does not relieve the owner of having to comply with those applicable laws and regulations. It does not somehow incorporate those laws and regulations into the Partition Order, and does not bestow jurisdiction on the Superior Court to determine what state, local or federal laws or regulations are "applicable."

Both versions of the new road at least maintained the quality of the old road as it existed on April 9, 1990. The roadway of the new road was designed by an engineer and consists of a depth of from 11 to 18 inches of crushed stone and gravel, over a layer of sand in most locations from three to 13 inches thick, over a layer of geotextile, providing for excellent drainage and stability. The traveled way of the new road is 14 to approximately 17½ feet wide. The roadway of the old road is located very close to the edge of Lake Champlain, and is prone to flooding and washing out, due to its low elevation and its location. As of 1990 it was not designed by an engineer, was composed of shale and beach stone, and was twelve or thirteen feet wide. Since that date, the Town has added crushed stone or gravel to the old road and has graded it, which has resulted in some widening of the old road since that date, but the quality and width of the new road is better than the 1990 quality and width of the old road, and is at least as good as the present quality and width of the old road.

Accordingly, based on the foregoing, in Docket No. S 313-97 Fc it is hereby ORDERED and ADJUDGED that Appellant/Defendants may relocate the old road unilaterally, and that the access roadway as it passes across the relocated easement (that is, the "new road" as redesigned and as shown in Exhibit 34 or 40) has not only maintained

5

but has improved the quality and the width of the old roadway as it existed on April 9, 1990.

Docket Nos. 144-8-99 Vtec and 10-1-00 Vtec

Appellant/Defendant applied in June of 1999 for site plan approval of the so-called "connector segment" of the contested roadway, as shown on Exhibit 33. The Planning Commission's decision on that application is on appeal to this court in Docket No. 144-8-99 Vtec. However, the December 1999 decision in the Superior Court case determined that a portion of that road was constructed on Intervenor/Plaintiff's property. Thereafter, Appellant/Defendant revised the design of the connector segment to locate it entirely on Appellant/Defendant's property, as shown on Exhibit 40. The Planning Commission's decision on that application is on appeal to this court in Docket No. 10-1-00 Vtec.

Because a portion of the initial design of the connector segment located it on Intervenor/Plaintiff's property, it does not meet the standards for site plan approval found in §303 of the Zoning Regulations. Therefore, in Docket No. 144-8-99 Vtec it is hereby ORDERED and ADJUDGED that site plan approval is DENIED for the connector segment in its initial configuration, as shown on Exhibit 33.

We proceed to review the revised site plan for the connector segment, as shown on Exhibit 40. The application meets the requirements of §303(a) for completeness of the application, as to the connector segment of road which is the subject of the application. It shows all existing features, landscaping, screening, ground contours and buildings, and the proposed improvements and features to be removed, on the site of the connector segment. As no traffic will be generated by the new road or the connector segment, §303(a)(6) is inapplicable. As no new landscaping materials are proposed to be added to the site, §303(a)(3) is inapplicable. Nothing in §303(a) requires the application for the connector segment to show the complete extent of the rest of the new road or the remainder of the old front road or the area of the turn where the old road and the new road meet.

The standards for site plan review in §303 are limited to the adequacy of pedestrian and vehicular access and circulation, parking, landscaping, screening, utilization of renewable energy resources, and "other similar site factors." Section 303(c) also states that "provisions of the Selectmen's Road Standards shall apply during site plan review."

6

Section 303 does not allow the Planning Commission, and hence this Court, to examine factors reserved to the ZBA by the Zoning Regulations. Hence the compliance, lack of compliance, or necessity for compliance of this private road segment with §400 of the Zoning Regulations is not before the Court in this case.

The ordinance adopted in 1988 relating to roads and driveways is found in Town's Exhibit K. It provides in §3 that "the right of way of any road hereafter constructed shall be sixty feet (60')." On the other hand, the so-called "A-76" standards for road construction, (including a 28'-wide traveled portion of which 22 feet is to be paved), are only required for "any road to be dedicated for a public highway." §4. Section 6 provides a process for the Selectboard[1] to grant a "variance" from "the strict adherence to strict standards." The purpose statement of the ordinance, in §1, explains that as over time "many private roads eventually become or should become public roads, the purpose of this regulation is to specify the requirements that all roads should meet."

Reading the ordinance as a whole, it is evident that the reservation of a sixty-foot-wide right-of-way[2] is required for any road, private or public, constructed within the Town of St. Albans after July 25, 1988, unless a variance from that provision has been obtained. On the other hand, nothing in the ordinance requires that a road or its traveled way actually be constructed to the A-76 standards unless it is to be dedicated as a public road. By requiring the reservation of a sixty-foot-wide right-of-way, the ordinance thus preserves the potential for newly-constructed roads to be dedicated as public roads in the future, without requiring premature construction of unnecessarily wide or unnecessarily paved private roads.

This interpretation also makes particular sense in the present instance, in which it would be entirely unnecessary (and perhaps somewhat ludicrous) to require a twenty-eight foot wide segment of road, with a 22-foot width of pavement, to be constructed in the

---

[1] It is unclear how this provision relates to the variance provisions in the zoning regulations, §305(e).

[2] We note that nothing in the ordinance requires the traveled portion of the actual roadway to be centered on the 60-foot-wide right-of-way.

7

middle of a private gravel road at most twenty feet wide.

Turning to the remaining factors for site plan approval, no parking is proposed to take place on the connector segment, therefore the adequacy of parking is inapplicable. Similarly, the connector segment will not affect the utilization of renewable energy resources, and that factor is therefore inapplicable.

Neither the Town nor Intervenor/Plaintiff filed a cross-appeal of the January 2000 Planning Commission decision. Without having filed a cross-appeal, they cannot now raise the adequacy of the proposed landscaping and screening as an issue. Village of Woodstock v. Bahramian, 160 Vt. 417 (1993). However, from the evidence presented at trial, and shown on Exhibit 40, it appears that the revised connector segment is adequately landscaped and screened from Intervenor/Plaintiff's property by existing hardwood trees and an existing cedar hedge. Other than the hedge as it stands within the revised location of the roadway, only a short portion of the hedge is proposed to be removed near the shore road, to provide adequate sight distance for vehicles exiting the connector segment onto the shore road. The remaining trees shown to be removed, also for sight distance purposes, are to the south of the connector segment, and did not landscape or screen it from any neighboring property.

As to the adequacy of the connector segment for pedestrian and vehicular access and circulation, the connector segment is adequate for access and circulation of passenger vehicles and delivery trucks; indeed, that function is what the roadway is designed to do. No new traffic will be created by the construction of the relocated road or connector segment; it serves exactly the same lots served by the former road, and no new construction or development is proposed for those lots.

As a private, rural, gravel road serving a limited number of lots, with a private speed limit of 15 miles per hour, it is also adequate for the pedestrian circulation that is anticipated. In fact, it avoids the former pedestrian-vehicular conflict on the old front road experienced by pedestrians, especially children, seeking access to the Lake from lots 11 through 19. Finally, the revised design of the connector segment is adequate for emergency vehicles' access to the properties from Lot 11 to the south, as it provides an adequate turning radius both for the turn to the east off the shore road and for the turn

8

back to the south onto the new back road. It also provides an improved access for emergency vehicles compared to the former configuration because the old front road became impassable due to flooding from time to time, especially in the spring of the year, while the new connector segment and new back road are engineered to avoid that problem.

Assuming for the purposes of this discussion that the presence of Class III wetlands beyond the area of the proposed site improvements is an "other similar site factor" within the jurisdiction of §303(b), this issue also is one not raised by Appellant/Defendant. Without having filed a cross-appeal, Intervenor/Plaintiff cannot now raise this issue. Village of Woodstock v. Bahramian, 160 Vt. 417 (1993). However, from the evidence presented at trial, we can conclude that no wetlands are adversely affected by the construction of the connector segment's roadway in the revised design, nor by the reservation of a 60-foot-wide right of way for the connector segment. The Court only has before it the site plan approval for the connector segment, not for the remainder of the new back roadway. In any event, the construction of the entire new road remains subject to all state and federal requirements, including those relating to wetlands protection.

In Docket No. 10-1-00 Vtec it is hereby ORDERED and ADJUDGED that site plan approval is GRANTED for the new road in its revised configuration, with the connector segment located entirely on Appellant/Defendant's property, conditioned on Appellant/Defendant's acquisition or designation of a right-of-way that is sixty feet in width for the new road. Nothing, however, requires the actual construction of the new road to Town Road standards, until and unless the road is proposed to be dedicated as a public road, or until and unless such improvement is required as a condition to future permits for the development of additional lots to be served by that road.

Dated at Barre, Vermont, this 21st day of September, 2000.

_____

Merideth Wright
Environmental Judge and
Presiding Judge, Franklin Superior Court, Specially Assigned